IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| MICHAEL KEITH FORRESTER,<br>*Plaintiff,* | § § § | |
| | § | EP-18-CV-00261-KC-RFC |
| -vs- | § § | |
| FEDERAL BUREAU OF PRISONS, SOUTH CENTRAL REGION; J.S. WILLIS, WARDEN - FCI LA TUNA; RACHEL CHAPA, FORMER WARDEN - FCI LA TUNA; DR. ACOSTA, FORMER HEALTH SERVICES ADMINISTRATOR - FCI LA TUNA; DR. MICHAEL LIN, FORMER CLINICAL DIRECTOR - FCI LA TUNA; NURSE SMITH, FCI LA TUNA; NURSE RIOS, FCI - LA TUNA; NURSE BROWN, FCI LA TUNA;  FEDERAL BUREAU OF PRISONS, NORTHEAST REGION; HSA BARNES, FCI ELKTON; DR. J DUNLOP, CLINICAL DIRECTOR - FCI ELKTON; AND PA GRIFFITH, FCI ELKTON,<br>*Defendants.* | § § § § § § § § § § § § § § § § | |

## REPORT AND RECOMMENDATION

On this day, the Court considered "Texas Defendants Willis, Chapa, Acosta, Lin, Smith, and Brown's Motion to Dismiss" (hereinafter "First Motion") (ECF No. 31), "Ohio Defendants Barnes, Dunlop, and Griffith's Motion to Dismiss" (hereinafter "Second Motion") (ECF No. 32), and *sua sponte* considered Plaintiff Michael Keith Forrester's claims against Defendant Nurse Rios. The matter was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 1(d) of Appendix C of the Local Rules for a Report and Recommendation by United States District Judge Kathleen Cardone.

For the reasons set forth below, the Court **RECOMMENDS** granting the government's First Motion, granting the government's Second Motion, and dismissing Forrester's claims against Nurse Rios pursuant to 28 U.S.C. § 1915.

## I. Background

Forrester was incarcerated at Federal Correctional Institution La Tuna ("La Tuna") in Anthony, Texas, from April 9, 2014, to February 24, 2016, and was transferred to Federal Correctional Institution Elkton/Federal Satellite Low Elkton ("Elkton") in Lisbon, Ohio, on March 1, 2016. (ECF No. 5:3–4). During his time in both federal facilities, Forrester alleges that he faced numerous instances of negligence, medical indifference, and lived in poor conditions. (*Id*. at 2–10).

Forrester first alleges that the living conditions in La Tuna infected him with anthracosilicosis ("black lung") and coccidioides immitis (Valley Fever"). (*Id*. at 3–5). While at La Tuna, the Special Housing Unit ("SHU") did not have proper ventilation and he was exposed to mold, asbestos, coal dust, and fungal spores. (*Id*. at 3). Further, the walls of the SHU dripped a yellowish liquid, and La Tuna was infested with cockroaches. (*Id*.). While Forrester complained about these living conditions to prison officials in La Tuna, Forrester was only moved from one prison cell to another prison cell even though the conditions in all prison cells at SHU were the same. (*Id*.).

On March 16, 2016, a routine x-ray at Elkton showed an approximately 20mm lesion on Forrester's left lung. (*Id*. at 4). Forrester was immediately taken to Salem Regional Medical Center ("Salem") for thirty days, and was given a preliminary diagnosis of non-tuberculosis mycobacterium pneumonia. (*Id*.). According to Forrester, Dr. Mateo, a pulmonologist at Salem, indicated that Forrester's lesion was caused by dust and other inhalable matters associated with that part of Texas. (*Id*.). Forrester was given medication and a follow up examination was scheduled. (*Id*.). According to Forrester, this follow up never occurred. (*Id*.). Additional x-rays were performed on April 20, 2016, May 26, 2016, and September 9, 2016. (*Id*.). Finally,

Forrester had surgery to remove a portion of his lungs on April 6, 2017. (*Id*. at 5). The surgical site was subsequently contaminated and ignored for several days. (*Id*.). Later test results for Forrester's removed lung showed black lung and valley fever. (*Id*.).

Second, Forrester alleges that the prison officials at both federal facilities ignored his kidney stones. (*Id*. at 6–9). Starting from August 14, 2013, Forrester made several complaints regarding pain and blood in his urine. (*Id*.). After passing several kidney stones, a CT scan was taken on October 24, 2013. (*Id*. at 6). For his treatment, Forrester indicates that he was told to drink water and was given ibuprofen and an antibiotic. (*Id*. at 7). Forrester finally visited a nephrologist on Number 24, 2015, and he was diagnosed with stage III chronic kidney disease with 53% kidney function. (*Id*. at 9). A follow up with an urologist and nephrologist were scheduled but the prison officials at Elkton refused to follow the given recommendation for the follow up. (*Id*.).

Forrester also alleges that the prison officials at La Tuna provided inadequate medical care for two surgeries regarding his anal fissures. According to Forrester, on July 2014, he visited Dr. Jamie R. Gomez for consultation regarding his anal fissures and Dr. Gomez recommended immediate surgery. (*Id*. at 6). Forrester did not have his surgery until November 21, 2014. (*Id*. at 7). A follow up was scheduled for three weeks after Forrester's surgery but this follow up did not occur until March 26, 2015. (*Id*.). Between his surgery on November 21, 2014, and his subsequent follow up on March 26, 2015, Forrester experienced continuous rectal bleeding. (*Id*.). In this follow up, Dr. Gomez recommended another surgery to address the continuous rectal bleeding within thirty days; however, the second surgery did not occur until July 6, 2015, and a follow up occurred on September 29, 2015. (*Id*. at 8).

3

Finally, Forrester alleges that the prison officials at La Tuna delayed his medical treatments or did not provide him with medication for various additional ailments. Specifically, prison officials delayed giving Forrester his HIV[1] medication, denied Forrester medication for pink eye, and did not treat a surgical clip which caused reoccurring pain. (*Id*. at 6, 8).

Forrester filed suit on September 7, 2018, against the Federal Bureau of Prisons[2] South Central Region and Northeast Region, J.S. Willis[3], Rachel Chapa, Dr. Acosta, Dr. Michael Lin, Nurse Smith, Nurse Rios[4], Nurse Brown, HSA Barnes, Dr. J. Dunlop, and P.A. Griffith under 28 U.S.C. 1983 for violations of the Fifth, Eighth, and Fourteenth Amendments. (*Id*. at 2). On May 6, 2019, the government filed its answer (ECF No. 30) and filed two separate motions to dismiss. (ECF Nos. 31, 32). The First Motion was filed on behalf of Defendants J.S Willis, Rachel Chapa, Dr. Acosta, Dr. Michael Lin, Nurse Smith, and Nurse Brown (collectively "Texas Defendants"), and the Second Motion was filed by on behalf of Defendants HSA Barnes, Dr. J. Dunlop, and P.A. Griffith (collectively "Ohio Defendants").

## II. Government's First Motion

In the First Motion, the government contends that Forrester failed to timely file his *Bivens* claims against the Texas Defendants, failed to state a *Bivens* claim against the Texas Defendants, and Defendant Smith is entitled to absolute immunity pursuant to 42 U.S.C. § 233. (ECF No. 31).

---

[1] Forrester was HIV positive prior to his incarceration at La Tuna. (ECF No. 5:5).
[2] Forrester's 1983 claim against Federal Bureau of Prisons South Central Region and Northeast Region is properly categorized as a suit under the Federal Tort Claims Act ("FTCA"). Further, while Forrester filed suit against the Federal Bureau of Prisons South Central Region and Northeast Region, the proper party is the United States of America. *Galvin v. Occupational Safety & Health Admin*., 860 F.2d 181, 183 (5th Cir. 1988) ("It is beyond dispute that the United States, and not the responsible agency or employee, is the proper party defendant in a Federal Tort Claims Act suit).
[3] The government has been authorized to represent all named defendants. (ECF No.24:4–6).
[4] Nurse Rios has retired from La Tuna. While the government has provided Nurse Rios's last known address, she has not been properly served. (ECF No. 24). Further, the government has been unable to contact her to authorize service of process on her behalf. Thus, the government's First Motion and Second Motion do not include Nurse Rios. (ECF No.31:6 n.1).

As an initial matter, because he was held in two federal prisons and asserts claims against federal prison officials, Forrester's claims fall under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971) and not under § 1983. A *Bivens* action is analogous to an action under § 1983 except that an action under § 1983 applies to constitutional violations by state actors, rather than federal actors. *Abate v. Southern Pac. Transp. Co.*, 993 F.2d 107, 110 n. 14 (5th Cir. 1993). An action under § 1983 shares the same substantive standard as an action under *Bivens*. *Rodriguez v. Woods*, No. B-94-CV-202, 1999 WL 197117, *1 (5th Cir. 1999).

### a. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to seek dismissal of a claim for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). On a Rule 12(b)(6) motion, a court accepts well-pleaded facts as true and construes them in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). A complaint will survive a motion to dismiss if its facts, accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet the "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court's task, then, is "to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012) (*en banc*) (citation and internal quotation marks omitted).

In ruling on a motion to dismiss, courts must limit their inquiry to the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *See, e.g.*, *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333,

338 (5th Cir. 2008). The same rule also applies to documents attached to the motion and a response thereto; they too must be referred to in the complaint and must be central to the plaintiff's claim. *See Downs v. Liberty Life Assurance Co. of Boston*, No. CIV.A. 3:05-CV-0791R, 2005 WL 2455193, at *3 (N.D. Tex. Oct. 5, 2005). Moreover, "[m]otions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotation marks omitted) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)).

Furthermore, *pro se* pleadings are reviewed under a less stringent standard than those drafted by attorneys and such pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam). However, even a *pro se* complaint may not merely set forth conclusory allegations. The *pro se* litigant must still set forth facts giving rise to a claim on which relief may be granted. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) (per curiam).

### b. Discussion

#### i. Statute of Limitations

The statute of limitations for a *Bivens* action in Texas is two years. *Spotts v. United States*, 613 F.3d 559, 573 (5th Cir. 2010). "[T]he limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Id.* at 574 (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001))). "A plaintiff's awareness encompasses two elements: (1) The existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions." *Piotrowski*, 237 F.3d at 576 (quoting *Piotrowski v. City of Houston* 51 F.3d 512, 516 (5th Cir. 1995)).

In this case, the statute of limitations bars Forrester's *Bivens* claims against the Texas Defendants. First, the statute of limitations bars Forrester's *Bivens* claim regarding his black lung and valley fever. The statute of limitations began to run sometime between March 16, 2016, and April 15, 2016—during Forrester's thirty day stay at Salem. On March 16, 2016, an x-ray at Elkton showed a lesion on Forrester's left lung, and Forrester was taken to Salem. At Salem, Dr. Mateo made a preliminary diagnosis of non-tuberculosis mycobacterium pneumonia. Forrester indicated that this particular ailment was caused by dust and other inhalable matters associated with that part of Texas. Thus, while the exact discovery date is unknown, the latest date Forrester became aware of his injury was on April 15, 2016. Further, while formal diagnosis of Forrester's condition did not occur until after his surgery on April 6, 2017, Forrester first learned of his injury on March 16, 2016, and during his thirty day stay at Salem, Dr. Mateo provided Forrester with sufficient information to connect his injury to the living conditions at La Tuna.

Moreover, Forrester's *Bivens* claims regarding his kidney stones, chronic kidney disease, anal bleeding and surgeries, insufficient medical treatments, and delay in medical treatments are all untimely. Unlike Forrester's black lung and valley fever claims, Forrester became aware of these alleged injuries and sought treatment for them while Forrester was a prisoner at La Tuna. Forrester left La Tuna on February 24, 2016, and arrived at Elkton on March 1, 2016. Thus, these claims against the Texas Defendants are all well outside of the two-year statute of limitations.

For example, while Forrester complained of continuous rectal bleeding, he had a second rectal surgery to address this issue on July 6, 2015, and had a follow up on September 29, 2015. (ECF No. 5:7–8). The statute of limitations for this claim would have lapsed on September 28, 2017, two years after Forrester's follow up on September 29, 2015. Similarly, Forrester began having kidney pains and blood in his urine on August 14, 2013, and was diagnosed with stage III

7

chronic kidney disease on November 24, 2015. (*Id*. at 6, 9). Afterwards, a follow up appointment was schedule for but it never occurred. (*Id*. at 9). While it is unclear how long Forrester's kidney problems lasted, the statute of limitations lapsed against the Texas Defendants on February 23, 2018, two years after Forrester left La Tuna.

Because the statute of limitations bars Forrester's *Bivens* claim against the Texas Defendants, this Court **RECOMMENDS** granting the government's First Motion. Because this Court recommends granting the government's first contention, the Court will decline to address the government's second and third contentions.

### III. Government's Second Motion

In the government's Second Motion, the government argues that this Court lacks personal jurisdiction over the Ohio Defendants, the venue is improper, and Forrester failed to state a claim against the Ohio Defendants upon which relief can be granted. (ECF No. 32).

#### a. Legal Standard

Personal jurisdiction over a defendant exists if the forum state's long-arm statute extends to the defendant and the exercise of jurisdiction comports with due process. *Sangha v. Navig8 ShipManagment Private Ltd*., 882 F.3d 96, 101 (5th Cir. 2018). Because Texas's long-arm statute extends to the limits of due process, the analysis of the two factors merges. *Id*.

Further, personal jurisdiction is divided between specific jurisdiction and general jurisdiction. *Id*. Because the Ohio Defendants are out of state defendants who have sporadic contacts with Texas, this Court will only decide whether or not specific jurisdiction exists. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd*., 566 F.3d 1012, 1017 (Fed. Cir. 2009).

In evaluating whether due process permits the exercise of specific jurisdiction, a court shall establish "(1) the non-resident defendant must have 'minimum contacts' with the forum

8

state resulting from an affirmative act on the defendant's part, and (2) the contacts must be such that the exercise of jurisdiction over the person of the defendant does not offend 'traditional notions of fair play and substantial justice.'" *Wien Air Alaska, Inc. v. Norddeutsche,* No. 95-10144, 1995 WL 449649,* 2 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

If a plaintiff establishes minimum contacts, the burden shifts to the defendant to make a compelling case that the assertion of jurisdiction is not fair or reasonable. *Sangha*, 882 F.3d at 102. To establish minimum contracts for specific jurisdiction, a defendant must have purposefully availed himself of the benefits and protections of the forum state such that he should reasonably anticipate being haled into court there. *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985). In other words, the plaintiff's cause of action must arise from or be connected to the defendant's forum-related contacts. *Id.* 475–76. Thus, the plaintiff cannot supply the only link between the defendant and the forum. *Walden v. Fiore,* 517 U.S. 277, 285 (2014).

b. **Discussion**

i. **Personal Jurisdiction**

The Ohio Defendants do not have sufficient minimum contacts with Texas to establish specific jurisdiction. According to the affidavits provided by the government, the Ohio Defendants are all employed in Ohio and reside outside of Texas. (ECF No. 32: Exhs. 1, 2; ECF No. 33). The Ohio Defendants visited Texas, at different times, several years prior to and without any connection to the alleged conduct which gave rise to Forrester's cause of action. (*Id.*). Outside of these unrelated visits, the Ohio Defendants have no contacts with Texas. (*Id.*).

Similarly, according to Forrester's Complaint, he allegedly received inadequate medical treatment from the Ohio Defendants while he was a prisoner at Elkton, which is located in Ohio. (ECF No.5:9). In conclusion, this Court lacks personal jurisdiction over the Ohio Defendants.

Because this Court lacks personal jurisdiction over the Ohio Defendants, this Court **RECOMMENDS** granting the governments Second Motion. This Court **FURTHER RECOMMENDS** transferring Forrester's *Bivens* action against the Ohio Defendants to the United States District Court for the Northern District of Ohio, Youngstown division. Finally, because this Court lacks personal jurisdiction, this Court will not address the government's second and third contentions.

## IV. Forrester's Claims Against Nurse Rios

Finally, this Court, *sua sponte,* considered Forrester's *Bivens* claims against Nurse Rios. Similar to Forrester's *Bivens* claims against the Texas Defendants, Forrester alleges that Nurse Rios violated his Fifth, Eighth, and Fourteenth Amendments rights while he was a prisoner at La Tuna. (ECF No. 5).

### a. Legal Standard

28 U.S.C. § 1915 instructs that a court "shall" dismiss an *in forma pauperis* complaint at any time, if it determines that the complaint is frivolous or it fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(i)–(ii) (2012). Further, the court may *sua sponte* dismiss on these grounds, even without serving the defendants. *See Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991) ("Dismissal [under § 1915] is 'often made *sua sponte* prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints.'") (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). The standard under § 1915(e)(2)(B) for dismissing a frivolous complaint applies to both prisoner and

non-prisoner complaints. *See Newsome v. EEOC*, 301 F.3d 227, 231-33 (5th Cir. 2002) (per curiam) (affirming dismissal based on § 1915(e)(2)(B) in a non-prisoner case).

"[A] complaint . . . is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke*, 490 U.S. at 325. "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (quoting *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999)). A claim is factually frivolous if the facts are "clearly baseless, a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.'" *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995) (quoting *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992)).

To determine whether a complaint fails to state a claim upon which relief may be granted, courts engage in the same analysis as when ruling on a motion for dismissal under Federal Rule of Civil Procedure 12(b)(6). *See Hale v. King*, 642 F.3d 492, 497 (5th Cir. 2011) (per curiam). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). To meet this pleading standard, the complaint must state more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level…on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

b. **Discussion**

### i. Forrester's Fifth Amendment and Fourteenth Amendment *Bivens* Claims

In *Ziglar v. Abbassi*, the Supreme Court recognized only three valid types of *Bivens* cases. 137 S. Ct. 1843, 1854–55 (2017). First, in *Bivens v. Six Unknown Fed. Narcotics Agents*, the Supreme Court recognized an implied action to compensate persons injured by federal officers in violation of the Fourth Amendment's prohibition against unreasonable searches and seizures. 403 U.S. 388, 397 (1971). Second, in *Davis v. Passman*, the Supreme Court recognized a *Bivens* remedy for a Fifth Amendment gender-discrimination case. 442 U.S. 228 (1979). Finally, in *Carlson v. Green*, the Supreme Court recognized a *Bivens* remedy for an Eighth Amendment Cruel and Unusual Punishment Clause case. 446 U.S. 14 (1980). Outside of these three unique circumstances, the Supreme Court views new *Bivens* claims with disfavor. *Abbassi*, 137 S.Ct. at 1857.

A *Bivens* claim is new if it is meaningfully different from the previous Supreme Court *Bivens* cases. *Id.* at 1859. Meaningfully different includes the rank of the officers involved, the constitutional right at issue, the extent of judicial guidance for the official conduct, the risk of disruptive intrusion by the Judiciary into the functioning of other branches, or the presence of potential special factors not considered in previous *Bivens* cases. *Id*. at 1860.

Here, Forrester has brought forth two new *Bivens* claims. Forrester's Fifth Amendment and Fourteenth Amendment claims are meaningfully different because they are brought forth in a context not previously recognized by the Supreme Court. While *Davis* relied upon the Fifth Amendment, *Davis* only recognized a Fifth Amendment remedy for gender-discrimination. Gender discrimination is not applicable here. Further, the Supreme Court has never recognized a

*Bivens* claim under the Fourteenth Amendment. Thus, this Court **RECOMMENDS** dismissing Forrester's Fifth Amendment and Fourteenth Amendment *Bivens* claims with prejudice.

### ii. Forrester's Eighth Amendment Bivens Claim

Unlike Forrester's Fifth Amendment and Fourteenth Amendment *Bivens* claims, Forrester has brought forth a valid *Bivens* claim under *Carlson v. Green* for the violation of his Eighth Amendment rights. The Eighth Amendment's proscription against cruel and unusual punishment requires prison officials to provide humane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Specifically, prison officials must provide prisoners with "adequate food, clothing, shelter, and medical care, and 'must take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–527 (1984)).

To establish liability under the Eighth Amendment, a plaintiff must show that the deprivation alleged was sufficiently serious and that the prison official acted or failed to act with deliberate indifference. *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018). "A prison official acts with deliberate indifference 'only if [(A)] he knows that inmates face a substantial risk of serious bodily harm and [(B)] he disregards that risk by failing to take reasonable measures to abate it.'" *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)). Deliberate indifference is an extremely high standard to meet. *Gobert,* 463 F.3d at 346. "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Id.* Finally, "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official

defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

In this case, Forrester does not allege sufficient facts to establish an Eighth Amendment violation against Nurse Rios. First, Forrester failed to establish that Nurse Rios was personally involved in refusing, delaying, or providing inadequate medical treatment to him while he was a prisoner at La Tuna, and Forrester failed to specifically allege how Nurse Rios was involved in the prison conditions which gave arise to his black lung and valley fever. In fact, while Forrester was a prisoner at La Tuna, he alleged that Dr. Lin was in charge of reviewing outside recommendations and was responsible for certain delays in his treatment and medication. (ECF No.5:7–8). Further, for similar reasons, Forrester also failed to state sufficient facts to establish that Nurse Rios acted with deliberate indifference. Forrester did not allege any facts to show that Nurse Rios knew that he faced a substantial risk of serious bodily injury and disregarded that risk by failing to take reasonable measures.

This Court **RECOMMENDS** dismissing Forrester's Fifth Amendment and Fourteenth Amendment *Bivens* claim against Nurse Rios with prejudice. This Court also **RECOMMENDS** dismissing Forrester's Eighth Amendment *Bivens* claim without prejudice. This Court **FURTHER RECOMMENDS** granting Forrester leave to amend his Eighth Amendment *Bivens* claim as amending would not be futile. See FED. R. CIV. P. 15(a)(2).

V.     **Conclusion**

For the foregoing reasons, the Court **RECOMMENDS** the following:

- The government's First Motion (ECF No. 31) should be granted, and Forrester's *Bivens* claims against the Texas Defendants should be **DISMISSED WITH PREJUDICE;**

- The government's Second Motion (ECF No. 32) should be granted, and Forrester's *Bivens* claims against the Ohio Defendants should be should be **TRANSFERRED** to the United States District Court for the Northern District of Ohio, Youngstown division; and

- Pursuant to 28 U.S.C. § 1915, Forrester's Fifth Amendment and Fourteenth Amendment *Bivens* claims against Nurse Rios should be **DISMISSED WITH PREJUDICE,** and Forrester's Eighth Amendment *Bivens* claim should be **DISMISSED WITHOUT PREJUDICE**. This Court **FURTHER RECOMMENDS** granting Forrester leave to amend his Eighth Amendment *Bivens* claim against Nurse Rios.

**SIGNED** this 17th day of June, 2019.

ROBERT F. CASTANEDA
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT**